PD-0413-15

PD-0413-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/6/2015 5:00:56 PM
Accepted 5/7/2015 1:18:21 PM
ABEL ACOSTA
CLERK

No. _____

In the
Court of Criminal Appeals
At Austin

———◆———

### No. 01-14-00165-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

———◆———

### No. 1344756

In the 338th District Court
Harris County, Texas

———◆———

## LOUIS MARKEITH WILLIAMS
*Appellant*

V.

## THE STATE OF TEXAS
*Appellee*

———◆———

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

May 7, 2015

ABEL ACOSTA, CLERK

**MANDY MILLER**
Attorney for Louis Markeith Williams
State Bar No: 24055561
2910 Commercial Ctr. Blvd., Ste. 103-201
Katy, TX 77494
(832) 900-9884
Fax: (877) 904-6846
mandy@mandymillerlegal.com

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, appellant requests oral argument. The First Court of Appeals substituted its judgment for that of the individual jurors when it found that trial counsel's failure to conduct an investigation for mitigating evidence did not prejudice appellant. The issues raised in this petition are fact specific and oral argument would allow the parties to address any concerns or questions this Court may have.

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

Counsel for the State:
1201 Franklin, Ste. 600
Houston, TX 77022

**Devon Anderson** — District Attorney of Harris County

**Alan Curry** — Assistant District Attorney on appeal

**David Overhuls** — Assistant District Attorneys at trial

Appellant or criminal defendant:

**Louis Markeith Willaims**

Counsel for Appellant:

**Cedrick Muhammad** — Counsel at trial
9894 Bissonnet, Suite 815
Houston, TX 77036

**Mandy Miller** — Counsel on appeal
2910 Commercial Center Blvd, Ste. 103-201
Katy, TX 77494

Trial Judge: **Hon. Brock Thomas**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT............................................................i

IDENTIFICATION OF THE PARTIES.......................................................................ii

INDEX OF AUTHORITIES....................................................................................iv

STATEMENT OF THE CASE.................................................................................. 1

REASON FOR REVIEW ......................................................................................... 1

GROUND FOR REVIEW ........................................................................................ 2

CONCLUSION ....................................................................................................... 6

CERTIFICATE OF COMPLIANCE.......................................................................... 6

CERTIFICATE OF SERVICE................................................................................... 7

# INDEX OF AUTHORITIES

## CASES

*Ex parte Brown,*
575 S.W.2d 517 (Tex. Crim. App. 1979)................................................. 4

*McGinn v. State,*
961 S.W.2d 161 (Tex. Crim. App. 1998)................................................. 4

*Williams v. State,*
___ S.W.3d ___, No. 01-14-00165-CR., 2015 WL 1135715 (Tex. App.--Houston [1st Dist.] Mar. 12, 2015, pet. filed) (not designated for publication) ........................... 1, 2

*Williams v. State,*
235 S.W.3d 742 (Tex. Crim. App. 2007)................................................. 4

## RULES

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................. ii

TEX. R. APP. P. 39.7........................................................................... i

TEX. R. APP. P. 68.2(c) ....................................................................... 1

### TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

### STATEMENT OF THE CASE

Appellant was charged by indictment with theft. (CR 15). A jury convicted appellant of the charged offense. (CR 263). After pleading true to two enhancement paragraphs, the jury sentenced appellant to 32 years confinement in the Institutional Division of the Texas Department of Criminal Justice. (CR 273, 274).

### STATEMENT OF THE PROCEDURAL HISTORY

On March 12, 2015, a unanimous panel of the First Court of Appeals issued an unpublished opinion affirming appellant's conviction for theft. *Williams v. State*, ___ S.W.3d ___, No. 01-14-00165-CR., 2015 WL 1135715 (Tex. App.--Houston [1st Dist.] Mar. 12, 2015, pet. filed) (not designated for publication) (Appendix A). No motion for rehearing was filed. After one extension was granted, this petition for discretionary review is timely if filed by May 12, 2015. *See* TEX. R. APP. P. 68.2(c).

### REASON FOR REVIEW

This petition for discretionary review should be granted because the court of appeals' has decided an important question of state law in a way that conflicts with applicable decisions of the Court of Criminal Appeals. Namely, the standard utilized by the court of appeals permits the court to substitute its judgment for that of the

individual jurors, in conflict with *Ex parte Brown*[1], which noted that an appellate court may not substitute its judgment for that of the jury in reviewing an assessment of punishment.

## GROUND FOR REVIEW

**Is it proper for reviewing courts to analyze whether mitigating evidence would have impacted an individual juror when the record establishes that trial counsel was deficient for failing to investigate his client's background and discover mitigating evidence?**

The Court of Appeals assumed, without deciding, that trial counsel's representation fell below an objective standard of reasonableness when he failed to investigate appellant's background for potentially mitigating evidence. However, the court determined that the trial court did not abuse its discretion in denying appellant's motion for new trial because "it was within the zone of reasonable disagreement...to have concluded that [a]ppellant did not prove a reasonable probability that, had trial counsel investigated and offered mitigating evidence, the outcome of the punishment proceeding would have been different." *Williams*, 2015 WL 1135715, at *4.

It is undisputed that trial counsel failed to investigate for evidence to present during the punishment phase of the trial. (Defense MNT exhibit 1). Counsel's failure to investigate is especially deficient in light of the fact that there was significant mitigating evidence to present to the jury. Both of appellant's parents were murdered when he was a young child. (RR MNT 8, 9, 18, 19). When his mother was alive, she

---

[1] 575 S.W.2d 517, 518 (Tex. Crim. App. 1979)

was addicted to drugs. (RR MNT 11, He was raised by his grandmother in a low-income, high-crime area. (RR MNT 9, 10, 19). As a result, appellant was exposed to drug dealing and violence from a very young age. (RR MNT 11). Appellant and Ms. Williams also testified that appellant, from a young age, felt pressure to help raise his sister and help his grandmother financially. (RR MNT 19, 20). Ms. Williams testified that she was available to testify at appellant's trial and would have testified on her brother's behalf. (RR MNT 12).

Appellant had previously been convicted of two felony offenses, raising his punishment range from 25 years confinement to life. *Id.* at \*2. The jury also learned that appellant had one additional felony conviction. *Id.* at \*3. Based on this and the facts of the offense, the State asked the jury to sentence appellant to 45 years in prison. *Id.*

In addition to his felony convictions, appellant was previously convicted of two charges of evading arrest on foot and two charges of possession of marijuana. *Id.* at \*4. The appellate court found that the trial court's denial of appellant's motion for new trial was within the zone of reasonable disagreement because, had appellant's sister and appellant testified, the jury may have learned of appellant's four other misdemeanor convictions. *Id.* The court assumes that this information would have provided additional support for the State's argument appellant deserved a harsher sentence. *Id.*

Appellate courts consistently refuse to substitute its judgment for that of the individual jurors. *See, e.g., Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (Appellate courts may not re-evaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder.); *see also, e.g., McGinn v. State*, 961 S.W.2d 161, 169 (Tex. Crim. App. 1998) (refusing to adopt a standard of review that would require the appellate court to substitute its judgment for that of the jury when considering certain mitigating evidence); *Ex parte Brown,* 575 S.W.2d 517, 518 (Tex. Crim. App. 1979) ("Court may not substitute its judgment for that of the jury in reviewing the assessment of punishment.").

In the same way the court cannot second guess a jury's determination of punishment, it cannot retroactively predict what would have made a difference to a juror on mitigation. Once an appellate court finds that counsel at trial failed to conduct an investigation into his client's background for mitigating evidence, it is improper for the appellate court to then determine whether counsel's failure to investigate prejudiced his client. It is impossible to predict what a jury will find mitigating and what it would not. And if reviewing courts are prohibited from second-guessing a jury's determination of punishment, it should also be prohibited from presupposing what would have caused an individual juror to lower its assessment of sentence.

Knowing of appellant's three prior felony convictions, the jury still sentenced him to less than the State was requesting. Had counsel investigated for mitigating

evidence and presented appellant's upbringing to the jury, it is reasonable to presume that his sentence would have been even lessened, even if they had become aware of his additional misdemeanor convictions during the process.

The appellate court's decision covers up the utter incompetence of trial counsel by presenting an inequitable choice for appellant when asking the jury for mercy – provide no mitigating evidence to explain appellant's criminal background and what has led him to this place, or provide mitigation with the risk of the jury learning of his misdemeanor convictions.

The court's choice is also based on a faulty premise. Although the jury may have learned of appellant's misdemeanor convictions had a more thorough investigation been conducted, such mitigation would have explained his criminal past and bad choices. The risk of the jury learning of appellant's misdemeanor convictions was far outweighed by the fact that appellant's criminal history was explainable by the mitigating evidence that counsel failed to discover.

## CONCLUSION

It is respectfully requested that this petition be granted, the First Court of Appeals' judgment be reversed, and the court ordered to enter findings consistent with this Court's opinion.

/s/ MANDY MILLER
MANDY MILLER
Attorney for Louis Markeith Williams
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846

## CERTIFICATE OF COMPLIANCE

In accordance with the Texas Rules of Appellate Procedure, I hereby certify that appellant's petition for discretionary review, filed on May 5, 2015, has 1,670 words based upon a word count under MS Word.

/s/ MANDY MILLER
MANDY MILLER
Attorney for Louis Markeith Williams
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846

## CERTIFICATE OF SERVICE

Appellant has sent a copy of the foregoing instrument to counsel for the State

of Texas at the following electronic mail addresses:

Carly Dessauer
Harris County Assistant District Attorney
dessauer_carly@dao.hctx.net

Lisa McMinn
State Prosecuting Attorney
lisa.mcminn@spa.state.tx.us

/s/ MANDY MILLER
MANDY MILLER
Attorney for Louis Markeith Williams
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846

7

# Appendix A

CAUSE NO. 1435261

THE STATE OF TEXAS       §    IN THE 180TH DISTRICT COURT

§

V.                              §    OF

§

ANGELA FOBE              §    HARRIS COUNTY, TEXAS

## MOTION TO QUASH THE INDICTMENT

TO THE HONORABLE JUDGE:

Now comes Angela Fobe, defendant in the above-styled and numbered cause, by and through her attorney of record, and respectfully moves this Court to quash the indictment, and for good cause shows the following:

Defendant is charged with the felony offense of theft. A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). A charge under §31.03 is a state jail felony if the value of the property stolen is $1,500 or more but less than $20,000. *Id.* at (e)(4)(A).

"Value" in theft prosecutions is defined as "(1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." TEX. PENAL CODE ANN. § 31.08(a) (West Supp. 2014). Fair market value is defined by caselaw as the amount the property would sell for in

cash given a reasonable time for selling it. *Keeton v. State,* 803 S.W.2d 304, 305 (Tex. Crim. App. 1991); *Valdez v. State,* 116 S.W.3d 94, 98 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd). Put another way, fair market value for purposes of a theft prosecution may be expressed as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Valdez,* 116 S.W.3d at 98 n.1.

The state alleges that the item stolen, a ring, is valued at over $1500, vesting this district court with jurisdiction. However, the State is unable to make a threshold showing of a value that vests this court with jurisdiction. The allegedly stolen item was not taken into evidence and defendant believes that the value of the ring has not, and cannot be ascertained. The complainant has indicated that the ring was a gift and that it has never been insured or appraised. Thus, she cannot provide personal knowledge regarding the purchase price. Additionally, the state has not provided defendant the name of any experts it intends to call who have appraised the ring.

Because the State is unable to establish the value of the stolen item, this Court lacks jurisdiction over the charge. Accordingly, defendant requests that this motion be granted and the cause dismissed. In the alternative, defendant requests a pre-trial hearing to determine whether the State can make a threshold showing sufficient to vest this Court with jurisdiction.

Respectfully submitted,


**MANDY MILLER**
Attorney for Angela Fobe
State Bar No: 24055561
2910 Commercial Ctr. Blvd., Ste. 103-201
Katy, TX 77494
(832) 900-9884
Fax: (877) 904-6846
mandy@mandymillerlegal.com


## CERTIFICATE OF SERVICE

Defendant certifies that a copy of this motion has been hand-delivered to the Assistant District Attorney representing the State of Texas on May 5, 2015.

_____
Mandy Miller

CAUSE NO. 1435261

| THE STATE OF TEXAS | § | IN THE 180TH DISTRICT COURT |
|---|---|---|
| | § | |
| V. | § | OF |
| | § | |
| ANGELA FOBE | § | HARRIS COUNTY, TEXAS |

## ORDER

On the 5th day of May, 2015, came to be heard defendant's Motion to Quash the Indictment.

Defendant's request for a pre-trial hearing to determine whether the State can make a threshold showing of the value of the allegedly stolen item sufficient to vest this Court with jurisdiction is GRANTED/DENIED.

After reading the pleadings and hearing the argument of counsel, this Court finds that said motion should be GRANTED/DENIED.

It is therefore, ORDERED, ADJUDGED AND DECREED that the indictment in the above-styled and numbered cause be quashed and the charge be dismissed.

Signed on _____ day of May, 2015.

_____
Presiding Judge



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-14-00165-CR

---

**LOUIS MARKEITH WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1344756**

---

### MEMORANDUM OPINION

A jury found Appellant guilty of the offense of felony theft.[1] After he pleaded true to two enhancement allegations, the jury assessed Appellant's punishment at 32 years in prison. Appellant appeals the judgment of conviction,

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(e)(5) (Vernon Supp. 2014).

raising one issue in which he asserts that he received ineffective assistance of counsel at trial.

We affirm.

## Background

On February 15, 2012, during business hours, three people entered a Ben Bridge Jewelry store in a mall in Houston. Their faces were covered. They used sledgehammers to smash the glass display cases. From the cases, they took 23 Rolex watches. As later described at trial, this type of robbery is called a "smash-and-grab."

The police received information from a confidential informant, D. Jordan, indicating that Appellant had some of the watches taken from the Ben Bridge store. With the assistance of another local jewelry store, Jonathon's Jewelry, the police arranged a sting operation to recover the watches. A video camera was set up to record the sting operation in the store.

Appellant entered Jonathon's Jewelry on April 20, 2012. The confidential informant accompanied Appellant. Inside the store, Appellant pulled a black bag from the waistband of his pants. Inside the bag were five Rolex watches. The price tags were still attached to the watches. Even though the retail value of the five watches was over $40,000, Appellant agreed to sell the watches for $20,000.

2

The jeweler offered Appellant a check, but Appellant refused, stating that he wanted cash. As he left the store, Appellant was arrested by police. The police seized the watches and Appellant's cell phone. After comparing serial numbers, the police determined that the watches seized from Appellant had been stolen from Ben Bridge during the February 15, 2012 smash-and-grab robbery.

The police obtained a search warrant for Appellant's cell phone. A forensic analysis of the phone revealed a photograph showing 15 watches, with price tags attached to them. The following text-message exchange was also on Appellant's cell phone:

Incoming: Where ya at

Incoming: Lookout homie I'm watching the news, ya dig?

Outgoing: What channel

Outgoing: What you see

Incoming: 26 they might bring back on it was. A smash n grab.

Outgoing: Another crew

Incoming: Some niggaz rolled up in the jewelry store smashed the counter.

Incoming: Thatz a bet they got down.

Outgoing: Yeah I seen it.

Incoming: I was just checking on ya.

3

Appellant was charged by an indictment with felony theft. The indictment read, in part, as follows:

> [Appellant] on or about APRIL 20, 2012, did then and there unlawfully appropriate by acquiring and exercising control over property, namely, FIVE WATCHES, owned by [R.] FERRARI, hereinafter called the Complainant, of the value of over twenty thousand dollars and under one hundred thousand dollars, with the intent to deprive the Complainant of the property.

Two enhancement allegations stated that Appellant had been previously convicted of possession of controlled substance in 2004 and in 2009.

At trial, the State acknowledged that it did not have sufficient evidence to show that Appellant had participated in the Ben Bridge smash-and-grab robbery. The robbers' faces had been covered. The State made clear at trial that it was not prosecuting Appellant as one of the people who had actually committed the smash-and-grab robbery at the jewelry store. Instead, the State communicated that it was prosecuting Appellant as being a "fence" for the stolen watches. Testimony showed that a fence is a person to whom the robber sells the stolen goods for further resale. Appellant's defense at trial was that the evidence did not show that he had any knowledge that the watches found in his possession were stolen.

The jury found Appellant guilty of the offense of theft, as charged in the indictment. At the beginning of the punishment proceedings, Appellant pleaded true to the two enhancement allegations in the indictment. Because of the

4

enhancement allegations, the minimum sentence that Appellant could receive was 25 years in prison.

During its argument, the State asserted that, as a fence for the stolen merchandise, Appellant is part of a criminal enterprise. The State indicated that a fence supports smash-and-grab robberies by providing the robbers with a place to sell the stolen goods. The State pointed out that the smash-and-grab robbery in this case occurred in a crowded shopping mall. The State argued that, given their nature, such robberies pose a danger to the public. Requesting a sentence of 45 years in prison, the State asked the jury to send a message that "we're not going to tolerate smash-and-grabs in Harris County and we're not going to tolerate the people that fence the stolen goods . . . ."

The defense argued that, because the theft offense of which Appellant was convicted was a "nonviolent crime," the jury should assess the minimum punishment of 25 years in prison. Defense counsel stated, "There was nothing that said that he was involved in the snatch-and-grab, which was the violent part."

The jury assessed Appellant's sentence at 32 years in prison. Appellant then filed a motion for new trial in which he asserted that he received ineffective assistance of counsel. Appellant asserted that his trial counsel's performance was deficient for the following reasons: (1) counsel did not file a motion to suppress the evidence obtained from Appellant's cell phone; (2) counsel should have called the

confidential informant, D. Jordan, to testify; (3) counsel "failed to conduct an independent investigation by contacting the State's witnesses" or hire an investigator; (4) counsel did not object to extraneous offense evidence; and (5) counsel failed to investigate Appellant's background or offer any mitigating evidence at the punishment phase of trial.

Appellant attached the affidavit of his trial counsel as an exhibit to the motion for new trial. The trial court conducted a hearing on the motion. Appellant and his sister testified at the hearing regarding Appellant's background and his upbringing. Appellant asserted that this was evidence that should have been offered by his trial counsel at the punishment stage as mitigating evidence.

The trial court denied Appellant's motion for new trial. This appeal followed. In one issue, Appellant claims that he received ineffective assistance of counsel at trial.

## Ineffective Assistance of Counsel

On appeal, Appellant asserts that he received ineffective assistance of counsel at trial by relying on the same grounds that he stated in his motion for new trial. In addition, Appellant raises a number of new grounds on appeal.

### A. Governing Legal Principles

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). To prevail

on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats an ineffectiveness claim. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

When, as here, an appellant has presented issues of ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). Such an abuse of discretion occurs only when no reasonable view of the record would support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

At a hearing on a motion for new trial, the trial court is the sole judge of witness credibility. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). We view evidence in the light most favorable to the trial court's ruling, and

will reverse only if no reasonable view of the record could support the trial court's finding. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

**B.    Analysis**

### *1.    Failure to investigate and to offer mitigating punishment evidence*

As he did in his motion for new trial, Appellant asserts on appeal that his trial counsel's performance was deficient because he failed to investigate Appellant's background and offer mitigating evidence at the punishment phase of trial. Even if we presume for argument's sake (1) trial counsel failed to investigate potential witnesses, who could offer evidence on Appellant's behalf during the punishment phase of trial, and (2) this failure to investigate fell below the objective standard of reasonableness, we conclude that Appellant has not shown that the trial court abused its discretion by denying his motion for new trial on this point.

The second prong of the *Strickland* test requires a defendant complaining of ineffective assistance of counsel to prove that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* It will not suffice for appellant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S. Ct. at 2067.

8

The failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that the witnesses were available and their testimony would have changed the result of the proceeding. *See Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). In evaluating the effect of potential punishment-phase witnesses, we compare the evidence presented by the State with the evidence that the jury did not hear due to counsel's failure to investigate. *Id.* at 896.

During the punishment phase of trial, the State introduced evidence that Appellant had been previously convicted of the offense of possession of a controlled substance in 2004 and in 2009 and had also been convicted of assault on a public servant in 2009. Based on his criminal history before committing the instant offense, the State asserted that Appellant should be given 45 years in prison.

At the hearing on the motion for new trial, Appellant presented the testimony of his sister, Ashley, and his own testimony to demonstrate that mitigating evidence was available, but not presented, by his trial counsel. In his brief, he summarizes the mitigating evidence gleaned from his and his sister's testimony, as follows:

> Both of appellant's parents were murdered when he was a young child. When his mother was alive, she was addicted to drugs. He was raised by his grandmother in a low-income, high-crime area. As a result, appellant was exposed to drug dealing and violence from a very young age. Appellant and [Ashley] also testified that appellant, from

9

a young age, felt pressure to help raise his sister and help his grandmother financially.

The record from the motion for new trial hearing reveals, however, that in response to the mitigating testimony by Ashley and Appellant, the State was compelled to delve further into Appellant's criminal history. On cross-examination, Ashley and Appellant admitted that Appellant had been running afoul of the law since he was 17 years old. Appellant acknowledged that, in addition to the three convictions that the State had shown during the punishment phase, he also had been convicted of evading arrest in 2002, two possession-of-marijuana offenses in 2004, possession of marijuana in 2006, and evading arrest in 2006. Thus, had Ashley and Appellant testified at the punishment proceeding, the jury would have heard about the additional criminal offenses committed by Appellant. This would have provided additional support for the State's argument during the punishment phase that Appellant should be given 45 years in prison based on his past pattern of criminal behavior. As mentioned, the jury assessed Appellant's punishment at 32 years in prison, which is closer to the minimum 25-year sentence than to the 45-year sentence requested by the State.

In short, it was within the zone of reasonable disagreement for the trial court to have concluded that Appellant did not prove a reasonable probability that, had trial counsel investigated and offered mitigating evidence, the outcome of the punishment proceeding would have been different. *Strickland*, 466 U.S at 694,

10

104 S. Ct. at 2068. We conclude that the trial court did not abuse its discretion when it denied Appellant's claim relating to the punishment phase of trial.

2.    *Failure to file motion to suppress evidence obtained from cell phone*

In his motion for new trial and on appeal, Appellant argues that his trial counsel's performance was deficient because counsel did not file a motion to suppress the evidence obtained from his cell phone, namely, the text messages and the photograph of the watches.

Appellant complains a motion to suppress should have been filed because the affidavit attached to the warrant does not show probable cause. To prevail on a claim of ineffective assistance based on counsel's failure to file a motion to suppress, Appellant was required to show that the trial court would have granted the motion. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

Normally, motions to suppress are reviewed using a bifurcated standard, deferring to findings of historical facts and reviewing de novo the application of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). But, when the trial court determines probable cause to support the issuance of a search warrant, it does not make a credibility determination; it is constrained to the four corners of the affidavit. *Id.* When reviewing the magistrate's decision to issue a warrant, "[a court] appl[ies] a highly deferential standard because of the

11

constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id.*

A court does not analyze the affidavit in a hyper-technical manner. Instead, it interprets the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. "When in doubt, [a court] defer[s] to all reasonable inferences that the magistrate could have made." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). If the magistrate had a substantial basis for concluding that probable cause existed, [a court] will uphold the magistrate's probable cause determination. *McLain*, 337 S.W.3d at 271.

A search warrant must be accompanied by a sworn affidavit that sets forth substantial facts establishing probable cause. *See* TEX. CODE. CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp. 2014). In addition, the affidavit must set forth sufficient facts to establish probable cause, showing that (1) a specific offense has been committed; (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense; and (3) the item is located at or on the person, place, or thing to be searched. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c).

An affidavit supporting a search warrant is sufficient if, from the totality of circumstances reflected in the affidavit, the magistrate was provided with a

12

substantial basis for concluding that probable cause existed. *See State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). Probable cause exists if, under the totality of circumstances set forth in the affidavit before the magistrate, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued. *Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). "The probable cause standard is not technical, it is practical, and deals with *probabilities*, not hard certainties." *State v. Cantu*, 785 S.W.2d 181, 183 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (emphasis in original).

Here, the affidavit, signed by a Houston police officer who participated in the investigation of the smash-and-grab robbery, accompanied the request for a search warrant to search Appellant's cell phone. In the affidavit, the officer testified that, on February 15, 2012, approximately 20 Rolex watches had been stolen from Ben Bridge Jewelers by masked men wielding sledgehammers.

The officer testified that, on March 28, 2012, the police had received a tip from a confidential source related to the Ben Bridge robbery. The confidential informant told police that a man, later identified in the affidavit as Appellant, wanted to sell 19 Rolex watches for only 50 percent of the watches' $100,000 retail price.

13

The officer stated in the affidavit that the confidential informant told the police that he would call Appellant on Appellant's cell phone to facilitate the purchase of one of the Rolex watches from Appellant. The officer testified that the informant called Appellant's cell phone. He stated that Appellant arrived at the informant's place of business one-and-one-half hours later. Forty-five minutes later, the informant turned over to police a watch that had been taken in the Ben Bridge smash-and-grab.

The affidavit continues to describe that Appellant was arrested 10 days later when he was found to be in possession of five more of the Rolex watches taken in the Ben Bridge robbery. Appellant's cell phone was seized at that time.

Appellant asserts that the affidavit is insufficient because "[t]he officer's conclusory statements fail to establish probable cause to believe that evidence of a crime was present on appellant's cell phone." We disagree.

Reviewing courts give great deference to a magistrate's determination of probable cause and consider reasonable inferences that provide a substantial basis for the magistrate's probable cause determination. *State v. Jordan*, 342 S.W.3d 565, 568–69 (Tex. Crim. App. 2011). In considering the four corners of the affidavit, here, the magistrate could have reasonably inferred that Appellant used his cell phone to facilitate the informant's purchase of a Rolex watch from Appellant that had been stolen from Ben Bridge Jewelers. From this, and under

14

the totality of the circumstances, as set out in the affidavit, the magistrate could have concluded that there was a "fair probability" that further evidence related to the Ben Bridge robbery would also be found on Appellant's cell phone. *See Moreno*, 415 S.W.3d at 287.

Appellant did not show that he would have prevailed had his trial counsel filed a motion to suppress. *See Jackson*, 973 S.W.2d at 957. Thus, we conclude that the trial court did not abuse its discretion when it did not grant Appellant's motion for new trial on the basis that his trial counsel failed to file a motion to suppress.

On appeal, Appellant also raises additional arguments relating to the search warrant that were not presented in his motion for new trial. Appellant is critical of the officer's affidavit because it does not detail the facts of the sting operation leading to Appellant's arrest. As the State correctly points out, for reviewing courts, including trial courts, the issue "is not whether there are other facts that could have, or even should have, been included in the affidavit." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). Rather, "[a court] focus[es] on the combined logical force of the facts that are in the affidavit, not those that are omitted from the affidavit." *Id.* As discussed, here, the combined logical force of the facts that are in the affidavit is sufficient for the magistrate to have determined

15

that there was a fair probability that evidence related to a crime would be found on Appellant's cell phone.

Appellant also points out that information relevant to the confidential informant's credibility were not included in the affidavit. Specifically, the affidavit did not disclose that the informant was under indictment for felony theft and had never been used before as an informant.

In *Blake v. State*, 125 S.W.3d 717, 723 (Tex. App.—Houston [1st Dist.] 2003, no pet.), we were presented with the issue of whether an omission in a probable cause affidavit regarding the credibility of a police officer, who had provided information to the affiant, should be analyzed as a type of misrepresentation under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 2676 (1978). We stated, "In *Franks*, the Supreme Court recognized that if an affirmative misrepresentation is knowingly included in a probable cause affidavit in support of a search warrant, and the misrepresentation is material and necessary to establishing the probable cause, the warrant is rendered invalid under the Fourth Amendment." *Blake*, 125 S.W.3d at 723–24 (citing *Franks*, 438 U.S. at 155–56, 98 S. Ct. at 2676). We noted, "The Texas Court of Criminal Appeals has not yet recognized that a *Franks* analysis pertains to omissions as well as false statements." *Id.* at 724. Recognizing that "the Fifth Circuit, along with other Texas Courts of Appeals, has concluded that allegations of material omissions are

16

to be treated essentially the same as claims of material misstatements," we held that the *Franks* analysis applies to omissions. *Id.* (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610–11 (Tex. App.—Dallas 1990, pet. ref'd)).

Applying the *Franks* analysis in *Blake*, we determined that the officer's affidavit was not invalid because "the record contains no evidence that . . . the affiant, intentionally or knowingly, with reckless disregard for the truth, made any misstatements or omissions in the affidavit that would affect the finding of probable cause in support of the issuance of the search warrant." *Id.* Similarly, in this case, the record also contains no evidence that the affiant police officer intentionally or knowingly, with reckless disregard for the truth, made any misstatements or omissions in the affidavit that would affect the finding of probable cause in support of the issuance of the search warrant. *See id.*

On this record, Appellant has not shown that a motion to suppress based on the alleged omissions would not have been granted. *See Jackson*, 973 S.W.2d at 957. Thus, we conclude that, with regard to the alleged omissions in the affidavit, Appellant has not shown that his trial counsel's performance was deficient for failure to file a motion to suppress. *See id.*; *see also Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

### 3. Failure to object to extraneous offense evidence

Appellant further asserts, as he did in his motion for new trial, that his trial counsel was deficient because he did not object to extraneous offense evidence. Specifically, Appellant complains that his counsel should have objected to the evidence of the smash-and-grab robbery based on Rule of Evidence 404(b) and Rule 403. To establish ineffective assistance of counsel based on a failure to object, Appellant was required to demonstrate that the trial court would have erred in overruling the objection had trial counsel objected. *See Vaughn v. State*, 931 S.W.2d 564, 566–67 (Tex. Crim. App. 1996).

Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. TEX. R. EVID. 404(b); *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Evidence of another crime, wrong, or act may be admissible, however, as same-transaction contextual evidence where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). That is, "under the reasoning that events do not occur in a vacuum[,]" evidence of extraneous offenses may be admissible "[t]o show the context in which

the criminal act occurred[.]" *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972). In short, the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Devoe*, 354 S.W.3d at 469. However, under Rule 404(b), same-transaction contextual evidence is admissible only when the offense would make little or no sense without also bringing in that evidence; it is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996).

Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).

As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Prible*, 175 S.W.3d at 731. A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting the conclusion that an extraneous transaction is relevant to a material, non-propensity issue. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

Here, had Appellant's counsel raised a Rule 404(b) objection to the admission of evidence of the smash-grab-robbery, it would have been within the

19

trial court's discretion to have overruled the objection. Evidence of the Ben Bridge robbery provided context for the jury to understand the theft offense with which Appellant was charged. The two offenses are interconnected with the extraneous offense evidence establishing the origin and ownership of the watches and establishing the misappropriation. In short, the two offenses are interconnected. The jury was entitled to know the circumstances surrounding the charged offense. The charged theft offense would have made little sense to the jury without the extraneous offense evidence.

Appellant also asserts that trial counsel should have objected to the extraneous offense evidence based on Rule of Evidence 403. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction. *Swarb v. State*, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

The evidence of the Ben Bridge robbery was admissible as contextual evidence to assist the jury in understanding how Appellant came to possess the watches, why he was not entitled to possess the watches, and who owned the watches. Without the evidence, the theft offense of which Appellant is charged would have made little sense to the jury and would have left it to speculate regarding the circumstances of how Appellant came to possess the watches. In other words, the jury likely would have been confused regarding the State's other evidence had the evidence of the Ben Bridge robbery not been admitted. Significantly, the State made clear that it was not attempting to show that Appellant participated in the Ben Bridge robbery. For these reasons, we also hold that the probative value of the evidence of the Ben Bridge robbery was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (identifying Rule 403 balancing analysis).

We conclude that the trial court, in denying Appellant's motion for new trial, could have reasonably determined that Appellant did not show that the trial court would have abused its discretion had it overruled either a Rule 404(b) or a Rule 403 objection to the extraneous offense evidence. Thus, we conclude that, on appeal, Appellant has not shown that the trial court erred in denying his motion for new trial based on the extraneous-offense ground.

## 4. Requesting extraneous offense instruction

On appeal, Appellant asserts that his counsel's performance was deficient because counsel failed to request that the trial court include a burden-of-proof instruction and a limiting instruction, regarding the extraneous robbery offense in the jury charge. Specifically, he claims that the trial counsel should have insured that the trial court instructed the jury, during the guilt-innocence phase, (1) that it could not consider evidence of extraneous offenses unless the offenses were proven beyond a reasonable doubt (burden-of-proof instruction), and (2) that evidence of extraneous offenses could only be used for limited purposes, and not as evidence of Appellant's character (limiting instruction).

During the charge conference, the following exchange occurred between defense counsel and the trial court:

> THE COURT: We had mentioned previously that with the issue of an extraneous instruction or not an extraneous instruction, you have indicated, [defense counsel], that you were specifically requesting that an extraneous instruction not be given; is that correct?
>
> [Defense Counsel]: Yes, sir.
>
> THE COURT: I just want to make sure that's for strategic purposes that you're asking that that not be done.
>
> [Defense Counsel]: That's what I asked for, Judge. . . .

A criminal defendant is "entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a

22

criminal generally." *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987). Thus, as discussed, evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant, but may be admissible for other legitimate purposes. TEX. R. EVID. 404(b).

If evidence has only been admitted for a specific purpose, then the trial court must—upon request—include a limiting instruction that the jury may only consider the evidence within its proper scope. TEX. R. EVID. 105(a). When requested, the court must also include an instruction not to consider evidence admitted for a limited purpose unless the jury finds beyond a reasonable doubt that the defendant committed the extraneous offenses. *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994).

Here, the record reflects that trial counsel expressly requested that extraneous-offense instructions *not* be included in the charge. The discussion between the trial court and counsel indicates that this was for strategic purposes. In his brief, Appellant asserts that trial counsel could not have had a strategic purpose for omitting the instructions. We disagree.

At trial, not only did the State acknowledge that the evidence did not show that Appellant had participated in the smash-and-grab robbery, Appellant's trial counsel also emphasized that the evidence did not show that Appellant had participated in the robbery. Trial counsel could have rationally believed that

extraneous-offense instructions may have confused the jury, directing it to find that Appellant had participated in the Ben Bridge robbery, thereby undermining Appellant's defense. We conclude that Appellant has not met his burden, under the first *Strickland* prong, to demonstrate that his trial counsel's failure to request extraneous offenses instructions rendered his representation deficient. *See Strickland*, 466 U.S. at 687–89, 104 S. Ct. at 2064; *see also Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) ("[T]he decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy").

5.    *Failure to investigate to facts of case*

In his motion for new trial, Appellant asserted that his trial counsel was deficient because he did not take steps to ensure that the State's confidential informant testified at trial. Appellant averred that, had the informant been called to testify, "counsel could have impeached his credibility with his felony convictions and inquired about any potential deals he had made with the State in exchange for his cooperation with the State." Appellant fails to recognize, however, that his trial counsel cross-examined one of the investigating police officers regarding these points. The police officer acknowledged that the informant had been convicted of the offense of theft and sentenced to 30 years in prison. The officer also indicated

24

that he was not aware that the informant had received any "consideration" for cooperating in this case.

Appellant also generally complained that trial counsel did not hire an investigator to assist with his defense. He also pointed out that counsel "failed to conduct an independent investigation by contacting the State's witnesses. . . . Instead, counsel relied on evidence provided to him by the State."

On appeal, Appellant expounds on his arguments. Appellant points out that, in his counsel's affidavit, offered in support of Appellant's motion for new trial, counsel "admits that he did not interview any of the State's witnesses and only relied on the State's file." Appellant acknowledges, however, that his counsel also stated in his affidavit that he met with Appellant, while he was in custody. Counsel also stated in his affidavit that he had met with the confidential informant "a couple of times" while the informant was in county jail. To refute this, Appellant offered the jail visitation log in support of his motion for new trial. He asserts that the visitor log indicates that trial counsel did not visit the informant in jail.

We agree that defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. 2066. Nevertheless, a claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the

case fails, absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). In other words, "[i]neffective assistance of counsel claims are not built on retrospective speculation; they must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (internal quotation marks omitted).

In his motion for new trial, Appellant did not show that calling the informant to testify, hiring an investigator, or conducting an independent investigation would have changed the outcome of his trial. Nor does he make such a showing on appeal. To the contrary, Appellant acknowledges in his brief, "How an investigation would have impacted the jury is, at this point, speculative."

We conclude that the trial court did not abuse its discretion in overruling Appellant's motion for new trial on the points relating to trial counsel's alleged failure to investigate. We further conclude that Appellant has not shown, on appeal, by a preponderance of the evidence, that there is a reasonable probability that the result of the trial would have been different had counsel engaged in the acts of investigation Appellant points to on appeal. *See Strickland*, 466 U.S at 694, 104 S. Ct. at 2068.

### 6.    *Cumulative Error*

Lastly, on appeal, Appellant asserts that "the cumulative effect of counsel's errors resulted in a constructive denial of effective assistance of counsel." The doctrine of cumulative error concerns performance of a harm analysis once multiple errors have been established. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Having determined that the trial court did not abuse its discretion in denying Appellant's motion for new trial, and that Appellant has otherwise failed to establish that his trial counsel rendered ineffective assistance of counsel, we conclude that there can be no cumulative error or harm in this case. *See id.* (concluding that non-errors in their cumulative effect cannot cause error); *see also Wyatt*, 23 S.W.3d at 30 (rejecting appellant's argument that cumulative effect of errors at trial denied him right to fair trial when the Court had previously rejected each of appellant's individual arguments).

We overrule Appellant's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).